98 N.J. Super. 446 (1968)
237 A.2d 637
THE UNION BUILDING & CONSTRUCTION CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
BOROUGH OF TOTOWA, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT AND THIRD-PARTY PLAINTIFF,
v.
COMMISSIONER, STATE HIGHWAY DEPARTMENT, STATE OF NEW JERSEY, THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided January 5, 1968.
*447 Mr. John J. Hanlon, Jr. for plaintiff (Messrs. Milton, Keane & De Bona, attorneys).
Mr. Louis Schwartz for defendant and third-party plaintiff.
Mr. John A. Hila, Deputy Attorney General, for third-party defendant (Mr. Arthur J. Sills, Attorney General of the State of New Jersey).
MOUNTAIN, J.S.C.
In the construction of Route No. 80 through the Borough of Totowa, third-party defendant New Jersey State Highway Department found it necessary to acquire a portion of a tract of land owned by plaintiff. *448 Extended negotiations led to agreement as to price and on January 28, 1966 the land was conveyed to the State, plaintiff retaining title to two separate segments of its original holding lying on either side of the strip conveyed. Shortly thereafter defendant municipality complained that the conveyance to the State had been illegal since it resulted in a subdivision without prior planning board approval and that the remaining tracts, still owned by plaintiff, failed to meet certain zoning standards. Plaintiff brought suit against the borough seeking a declaratory judgment; the latter filed an answer and counterclaimed against plaintiff and a third-party complaint against New Jersey State Highway Department, which in turn pleaded the defense of sovereign immunity. The case now before the court, on briefs and an agreed statement of facts, essentially raises two issues: (1) whether the conveyance to the State of New Jersey, in order to be valid, should have been preceded by municipal planning board approval, and (2) whether the two parcels still owned by plaintiff fail to meet zoning standards, and if such be the case, what, if anything, may the municipality do by way of presently effective regulation.
As to the first point, we recognize initially the well settled principle that the Highway Department is the alter ego of the State. Springfield Township v. N.J. State Highway Dept., 91 N.J. Super. 567, 575 (Law Div. 1966). It is an executive arm created and existing to fulfill a primary function of State Government  the construction, maintenance and operation of highways. State v. Maas & Walstein Co., 83 N.J. Super. 211, 218 (App. Div. 1964). As such it is, in general, immune from the effect of municipal regulation. N.J. Interstate Bridge and Tunnel Commission v. Jersey City, 93 N.J. Eq. 550 (Ch. 1922) (building permit); Town of Bloomfield v. New Jersey Highway Authority, 18 N.J. 237 (1955) (zoning ordinance); Springfield Township v. N.J. State Highway Dept., supra (fire ordinance). While more or less tacitly recognizing the force of these and other similar authorities, the municipality nevertheless urges *449 that subdivision control, as embodied in its subdivision ordinance, is somehow different and should not have been ignored when plaintiff made its conveyance to the State. It points out that the enabling legislation, the Municipal Planning Act (1953), N.J.S.A. 40:55-1.1 et seq., nowhere exempts a conveyance to the State from its operation, and hence such a transfer must have been intended to come under the control of the statute and any implementing municipal ordinance. Such is not the case. Unless legislation explicitly or by clear and unmistakable implication includes the State, the latter will not be held to come within its terms, at least where such inclusion would or might result in any derogation of sovereign power.
It is further urged by the borough that its asserted right of subdivision control should not be denied where the transfer of title, as is here the case, results from a voluntary conveyance rather than from a judgment in condemnation. This position is apparently a recognition that by legislative definition "divisions of property upon court order" do not come within municipal control. N.J.S.A. 40:55-1.2. Even if subdivision control were valid as against the State, nevertheless the distinction sought to be drawn between the two methods of acquisition would be entirely unacceptable. It has already been emphatically condemned, although in a somewhat different context. See City of East Orange v. Palmer, 47 N.J. 307 (1966), where Justice Hall observed,
"Indeed, such a thesis [that acquisition by condemnation should be treated differently than by voluntary conveyance] could bring about otherwise needless resort to the `rugged remedy' of condemnation, contrary to the universally accepted policy of encouraging acquisition through voluntary conveyance." (at p. 314)
With respect to this argument plaintiff draws attention to N.J.S.A. 27:7-22 which states that
"The commissioner [State Highway Commissioner] may acquire lands or rights therein whether for immediate or future use by gift, devise or purchase, or by condemnation * * *" (Emphasis added). *450 It urges, quite convincingly, that this authorization is not to be diluted by any supposed grant of regulatory power to a municipality. The point is well taken. The right to purchase land for a public purpose is as clearly and necessarily an attribute of sovereignty as is the power to condemn the same land. In passing, it may be worthwhile to observe that the statute quoted above does not delegate authority; it allocates responsibility. The Highway Commissioner, representing an executive arm of the State Government, is here designated to exercise directly certain state powers in order to perform certain state responsibilities. Quite different is the delegation to a municipality, itself the creation of the State, of powers to effect such local regulation as may seem appropriate. We conclude, then, that subdivision resulting from the acquisition of land by the Highway Department for highway purposes, whether title passes to the State by judgment in condemnation or by voluntary conveyance, is entirely exempt from regulation by municipal subdivision legislation.
As to the second issue before the court, whether either or both of the tracts retained by plaintiff fails to meet existing zoning standards, the borough concedes that neither lot is undersized and that on neither lot is there any building which fails to conform to the so-called "Area and Bulk Schedule" of the zoning ordinance. It is, however, asserted that neither lot has adequate "frontage" on an approved street. The ordinance provides that each lot must front upon an improved street and, in the Industrial Zone where plaintiff's lands are located, have a width of 150 feet. Defendant contends that these two sections of the ordinance, when read together, require that each lot have 150-foot frontage on an improved street. Neither lot meets this alleged requirement, although each  one by virtue of a 50-foot right of way and the other by a right of way of 25 feet  has direct access over other lands of the State to an improved road. I cannot read the ordinance to impose a requirement of 150-foot frontage. The two requirements, one having to do with frontage and the other with lot width are entirely unrelated in the text *451 of the ordinance. The "width" of a lot is not necessarily nor even generally measured along the front line. It is more often defined as the mean distance between the side lines. Accordingly, it is my conclusion that neither of plaintiff's presently owned lots fails in this respect to meet the standards embodied in the applicable zoning ordinance. Thus we do not reach the interesting and possibly difficult question that would be presented if, after a valid partial taking by the State, the remaining property constituted a substandard lot.
There will be judgment for plaintiff in accordance with the prayers of the complaint, but without costs.